In the United States District Court
For The Northern District of Illlinois
Eastern Division

| | | |
|---|---|---|
| Jon Niermann *individually and on behalf of persons similarly situated,* | § § § | |
| Plaintiff, | § § | No. _____ |
| v. | § § | |
| Trans Union, LLC | § § | |
| Defendant. | § § § | |

---

## ORIGINAL CLASS ACTION COMPLAINT

---

Plaintiff, Jon Niermann, brings this action, individually and on behalf of others similarly situated, against Defendant, Trans Union, LLC ("TransUnion"). TransUnion has unlawfully charged Mr. Niermann, who was a victim of identity theft, a $10.00 fee for placing a "Security Freeze" notice on his file to prevent unauthorized persons from opening any new credit in Mr. Niermann's name. TransUnion unlawfully required Mr. Niermann to pay this $10.00 charge as a pre-condition to placing the Security Freeze on Mr. Niermann's file, contrary to the Texas Consumer Credit Reporting Act ("Texas CCRA").

### I.    Jurisdiction and Venue

1.    This Court has jurisdiction in this action pursuant to 28 U.S.C. § 1332 in that this action is between citizens of different states and the total amount in controversy exceeds $5 million.

2.      Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391 and Tex. Bus. & Com. Code § 20.13 because TransUnion resides in this District and the violation giving rise to Mr. Niermann's claims occurred here.

## II.    Parties

3.      Plaintiff, Jon Niermann, is a resident and domiciliary of Austin, Travis County, Texas. Mr. Niermann brings this action on behalf of himself and a class of similarly situated Texas residents who submitted valid requests for TransUnion to place a Security Freeze on their credit files but with whose requests TransUnion failed to comply within the statutorily mandated five-day period, requiring payment in advance of a fee or presentation of a police report, investigative report, or complaint involving identity theft as a pre-condition to placing the Security Freeze.

4.      Defendant, Trans Union LLC, is a Delaware limited liability company with its principal place of business in Chicago, Illinois. TransUnion is wholly owned by Trans Union Corp., a Delaware corporation. Trans Union Corp.'s principal place of business in in Chicago, Illinois.

## III.    Factual Allegations

5.      Identity theft is an increasingly serious problem for millions of consumers in Texas and throughout the United States. In December 2013, the Bureau of Justice Statistics, an office of the U.S. Department of Justice ("BJS"), reported that approximately 1.6 million persons, or 7% of all U.S. residents age 16 or older, were victims of one or more incidents of identity theft in 2012. (*See* U.S. Department of Justice, Bureau of Justice Statistics: Victims of Identity Theft, attached as Ex. 1, ("BJS Report") at 1.) Direct and indirect losses from identity theft totaled $24.7 billion in 2012, or over $10 billion more than the total losses from all other property crimes (burglary, motor vehicle theft, and theft) combined. (*Id.* at 6.)

6. Security Freezes are an important tool for consumers seeking to protect themselves against the growing threat of identity theft. A Security Freeze places a notice on a consumer's file prohibiting a Credit Reporting Agency ("CRA") from releasing a consumer report relating to the extension of credit involving that consumer file without the consumer's express authorization. Texas, along with 49 other states, plus the District of Columbia, requires CRAs to place Security Freezes on consumer accounts upon request. Tex. Bus. & Com. Code § 20.01(8).

7. The Texas CCRA requires that "[o]n written request sent by certified mail that includes proper identification provided by a consumer, a consumer reporting agency shall place a security freeze on a consumer's consumer file **not later than the fifth business day** after the date the agency receives the request." *Id.* § 20.034(a).

8. The right to a Security Freeze is created solely by state law, and Security Freezes are not regulated by the federal Fair Credit Reporting Act or any other federal law. The BJS estimates that in 2012 approximately 9% of identity theft victims contacted CRAs to report the theft, and that 38% of these consumers placed Security Freezes on their files.

9. Mr. Niermann is a victim of identity theft. On April 24, 2014, Mr. Niermann learned that someone had opened a Wells Fargo credit card in his name. He closed the account before any charges were made and filed a report of fraud and identity theft with the Austin Police Department ("APD").

10. On May 5, 2014, Mr. Niermann requested and received a copy of the police report on his identity theft from the APD. (Letter from Jon Niermann to TransUnion (June 21, 2014), attached as Ex. 2, at 6.) This police report is the standard format report issued by APD. By letters sent the same day, Mr. Niermann asked the three major CRAs, including TransUnion, to place a Security Freeze on his file. Mr. Niermann included copies of his driver's license and social security card and a copy of the police report. Experian promptly complied with his request. TransUnion, however, did not comply with his request, but instead mailed a form letter requiring that he pay a $10.00 charge before TransUnion would place the Security Freeze on his file.

11.     Under the Texas CCRA, as under the laws of most states, victims of identity theft like Mr. Niermann are exempt from any charge for the placement, temporary lifting, or removal of a Security Freeze. TEX. BUS. & COM. CODE § 20.04(6). The Texas CCRA provides that a CRA may not charge a fee for these services to a consumer who "has submitted to the consumer reporting agency a copy of a valid police report, investigative report, or complaint involving the alleged commission of an offense under Section 32.51, Penal Code."[1] (*Id.*)  It was therefore illegal and a violation of the Texas CCRA for TransUnion to charge Mr. Niermann a fee for placing a Security Freeze. TEX. BUS. & COM. CODE § 20.04(b).

12.     In addition, while a separate section of the Texas CCRA allows CRAs to charge a "reasonable fee," not to exceed $10.00, for placing a Security Freeze, Section 20.034(a) does not make the CRAs' duty to place the Security Freeze within five business days conditional on payment of the charge, nor does it allow CRAs to delay placing the Security Freeze until after the charge is paid. TEX. BUS. & COM. CODE § 20.034(a). Thus, TransUnion's requiring payment of the illegal charge as a pre-condition to placing a Security Freeze on Mr. Niermann's file also violated the Texas CCRA.

13.     On May 21, 2014, Mr. Niermann again requested that TransUnion place a Security Freeze on his file. Again, TransUnion responded with the same form letter requiring that he pay the $10.00 charge before TransUnion would place the Security Freeze on his file. A third time, on June 7, 2014, Mr. Niermann wrote to TransUnion requesting that TransUnion place a Security Freeze on his file. For the third time, TransUnion responded with the same form letter requiring payment of the $10.00 charge before TransUnion would place the Security Freeze.

14.     On June 21, 2014, Mr. Niermann made a fourth Security Freeze request to TransUnion, this time by certified mail, again including copies of his driver's license and social

---

[1] Section 32.51 of the Texas Penal Code forbids the fraudulent use or possession of identifying information, commonly known as "identity theft." TEX. PENAL CODE § 32.51.

security card and a copy of the police report. (*See* Ex. 2.) TransUnion received this fourth request on June 25, 2014. (*Id.*)

15.     Mr. Niermann's June 21 request complied with all Texas CCRA requirements for requesting a Security Freeze, because it (1) was sent by certified mail and (2) included proper identification. TEX. BUS. & COM. CODE § 20.034. TransUnion was therefore required to place the Security Freeze notice on Mr. Niermann's file within five business days of June 25, 2014. *Id.*

16.     TransUnion, however, failed to place the Security Freeze on Mr. Niermann's file within five business days, in violation of the Texas CCRA. Instead, on June 30, 2014, TransUnion mailed Mr. Niermann the same form letter for a fourth time, again requiring that he pay the $10.00 charge before TransUnion would place the Security Freeze on his file. (Letter from TransUnion to Jon Niermann (June 30, 2014), attached as Ex. 3.)

17.     Mr. Niermann sent two more Security Freeze requests to TransUnion on July 6 and July 22, specifically calling attention to the fact that he was a victim of identity theft and that he had provided a copy of the police report, and thus was not required to pay any charge for the Security Freeze. On both occasions, TransUnion again responded with a form letter regarding the requirements for requesting a Security Freeze and did not place the Security Freeze on Mr. Niermann's file.

18.     It was not until Mr. Niermann contacted Paul Meyers of Strasburger & Price, outside counsel for TransUnion, that TransUnion finally attended to his request. On August 11, 2014, Mr. Niermann wrote an email to Mr. Meyers explaining his situation. The next day, August 12, 2014, he received an email from TransUnion confirming that TransUnion had placed a Security Freeze on his account and that he did not owe any fee for this service. In the email, TransUnion stated that the police report Mr. Niermann provided, which was the standard form police report issued by APD in response to requests from identity theft victims like Mr. Niermann, was not generally accepted by TransUnion as a valid police report. TransUnion, however, stated that it would make an exception and accept the APD police report in Mr.

Niermann's case. The same day, TransUnion mailed him written confirmation of the Security Freeze.

19.     TransUnion's delay in placing the Security Freeze for over six weeks (far longer than the statutorily mandated 5 days) violated the Texas CCRA. In addition, TransUnion's repeated insistence that Mr. Niermann provide payment or a police report, investigative report, or complaint involving the alleged commission of identity theft as a pre-condition to TransUnion's placing the Security Freeze on his file violated the Texas CCRA.

20.     First, as explained above, identity theft victims like Mr. Niermann are exempted from any charge for the Security Freeze service by law. TransUnion's charging Mr. Niermann a $10.00 fee and its repeated demands for payment of this fee after Mr. Niermann had already provided a police report showing that he was a victim of identity theft thus violated the Texas CCRA.

21.     Second, TransUnion's repeated form letters show that TransUnion has a policy and practice of unlawfully charging consumers a fee or requiring them to provide a police report, investigative report, or complaint involving the alleged commission of an identity theft offense as a pre-condition to placing a Security Freeze and that TransUnion repeatedly, knowingly, willfully, and as a matter of policy violates the Texas CCRA by failing to place a Security Freeze within five days of receiving a request meeting all statutory requirements unless the consumer also pays the charge in advance or provides a police report, investigative report, or complaint, contrary to the requirements of Texas law. TEX. BUS. & COM. CODE § 20.034(a).

## IV.     CLASS ALLEGATIONS

22.     Mr. Niermann seeks to maintain this action as a class action on behalf of the following Class and Identity Theft Subclass:

> **Class:** All individuals residing in Texas who provided a written request for a Security Freeze to TransUnion by certified mail from March 18, 2011 to the present including identification in the form of a drivers license, birth certificate, passport, state-issued identification, or some other legal document indicating identity but

on whose files TransUnion did not place a Security Freeze within five business days of receiving the request, requiring payment in advance of a fee or presentation of a police report, investigative report, or complaint involving identity theft as a pre-condition to placing the Security Freeze.

**Identity Theft Subclass:** All individuals residing in Texas who provided a police report, investigative report, or complaint involving the alleged commission of an identity theft offense along with a Security Freeze request to TransUnion, and whom TransUnion nevertheless charged a fee for the Security Freeze service from March 18, 2011 to the present.

23.     **Ascertainability.** The Class and the Identity Theft Subclass are ascertainable in that they are comprised of individuals who can be identified by reference to purely objective criteria, including TransUnion's records of Security Freeze requests, as well as Class members' testimony and evidence.

24.     **Numerosity. Fed. R. Civ. P. 23(a)(1):** Mr. Niermann does not know the exact size of the Class and the Identity Theft Subclass. Because millions of people throughout the United States, including in Texas, are victims of identity theft each year, and a substantial percentage of identity theft victims contact CRAs to request a Security Freeze, and because TransUnion has a routine policy of unlawfully requiring Texas residents to pay a $10.00 charge in advance or provide a police report, investigative report, or complaint involving the alleged commission of an identity theft offense as a pre-condition to performing the Security Freeze service, the Class is likely to number tens of thousands of people. In addition, because Austin is the fourth largest city in Texas, with approximately 885,000 residents, and TransUnion has stated that it generally does not accept the standard police report issued by APD as a valid police report, the Identity Theft Subclass is likely to number at least in the hundreds, if not thousands, of people. Joinder of all Class or Identity Theft Subclass members would therefore be impracticable. The number of Class and Identity Theft Subclass members and their identities and addresses can be readily ascertained from TransUnion's records and Class members' testimony

and evidence. Class members may be notified of this action by first-class mail, supplemented, if the Court deems appropriate, by published notice.

25. **Existence and Predominance of Common Questions of Fact and Law. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Class and the Identity Theft Subclass. These questions predominate over the questions affecting only individual Class Members. These common legal and factual questions include:

1. Whether TransUnion violated Tex. Bus. & Com. Code § 20.034 by failing to place a security freeze on Mr. Niermann's and the Class members' files within five business days of receiving a Security Freeze request by certified mail including proper identification;

2. Whether TransUnion violated Tex. Bus. & Com. Code § 20.04 by unlawfully charging a fee to Mr. Niermann and the Identity Theft Subclass members, despite the fact that they had provided a police report, investigative report, or complaint showing that they were victims of identity theft;

3. Whether TransUnion's violations of the Texas CCRA were willful.

4. Whether TransUnion's violations of the Texas CCRA were negligent.

5. Whether TransUnion is liable to Mr. Niermann and the Class members for statutory damages and the amount of such statutory damages.

6. Whether Mr. Niermann and the Class members are entitled to injunctive and/or declaratory relief.

26. **Typicality. Fed. R. Civ. P. 23(a)(3).** Mr. Niermann's claim is typical of those of the other Class and Identity Theft Subclass members. Mr. Niermann and the Class members have been damaged by the same wrongful conduct by TransUnion. Like the other Class Members, Mr. Niermann sent TransUnion a valid request for a Security Freeze under Tex. Bus. & Com. Code § 20.034 but did not receive the Security Freeze within the statutorily mandated five-business-day period. Like the other Identity Theft Subclass members, Mr.

Niermann provided a police report showing that he was a victim of identity theft but was nevertheless unlawfully charged a fee for the Security Freeze service.

27. **Adequacy of Representation:** Mr. Niermann is an adequate representative of the Class and the Identity Theft Subclass because his interest does not conflict with those of the Class or Identity Theft Subclass members. Mr. Niermann has retained competent counsel experienced in complex class action litigation in the consumer credit reporting area. Mr. Niermann intends to prosecute this action vigorously and protect the interests of the Class and the Identity Theft Subclass. Mr. Niermann and his counsel will adequately protect the Class members' interests.

28. **Superiority. Fed. R. Civ. P. 23(b)(3).** Common questions of law and fact predominate over questions affecting only individual members of the Class and the Identity Theft Subclass, and a class action is superior to other available methods for fair and efficient adjudication of this controversy. The issues in this litigation include only TransUnion's failure to comply with the Texas CCRA's provisions requiring that a Security Freeze be placed on consumers' accounts within five business days of a valid request and forbidding charging a fee for this service to consumers who have provided a police report, investigative report, or complaint showing that they are victims of identity theft and do not include any other potential individual disputes between putative Class members and TransUnion. The damages suffered and statutory damages to which each Class member is entitled are such that individual prosecution would prove burdensome and expensive to the Class members and the court system. Individualized litigation would increase the delay and expense to all parties and the court system and present a potential for inconsistent or contradictory judgments. By contrast, class action litigation presents fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

29. **Injunctive Relief Appropriate for the Class. Fed. R. Civ. P. 23(b)(2).** Class certification is also appropriate because TransUnion has acted on grounds generally applicable to the Class and the Identity Theft Subclass, making appropriate equitable injunctive relief with

respect to Mr. Niermann and the Class and Identity Theft Subclass members. Specifically, Mr. Niermann seeks an injunction that TransUnion comply with all Security Freeze requests from Texas residents submitted by certified mail with proper identification within five business days without requiring payment in advance of any charges or submission of a police report, investigative report, or complaint involving the alleged commission of an offense involving identity theft as a precondition for placing the Security Freeze.

## V. CAUSES OF ACTION

### A. Violation of TEX. BUS. & COM. CODE § 20.034 (on behalf of the Class)

30.     Plaintiff incorporates by reference all previous paragraphs of this Complaint as though fully set forth here.

31.     TransUnion is a consumer reporting agency as defined by the Texas CCRA, TEX. BUS. & COM. CODE § 20.01, *et seq.*

32.     Mr. Niermann is a "consumer" within the meaning of the Texas CCRA, because he is an individual residing in Texas. *Id.* § 20.01(2).

33.     On June 25, 2014, Mr. Niermann sent a written request by certified mail to TransUnion, including proper identification, asking TransUnion to place a Security Freeze on his file.

34.     TransUnion failed to place a Security Freeze on Mr. Niermann's file within five business days of June 25, 2014, in violation of TEX. BUS. & COM. CODE § 20.034.

35.     In failing to place the Security Freeze on Mr. Niermann's file with five business days, TransUnion acted willfully in accordance with a deliberate policy of requiring payment of a charge in advance or provision of a police report, investigative report, or complaint involving the alleged commission of an offense involving identity theft as a pre-condition to placing a Security Freeze, contrary to the plain and unambiguous requirements of TEX. BUS. & COM. CODE § 20.034.

36.     In the alternative, TransUnion was negligent in failing to place the Security Freeze on Mr. Niermann's file within the five-day period mandated by TEX. BUS. & COM. CODE § 20.034.

37.     As a result of TransUnion's violations of TEX. BUS. & COM. CODE § 20.034, Mr. Niermann and the Class Members are entitled to damages including statutory damages under TEX. BUS. & COM. CODE § 20.09 and injunctive relief.

**B. Violation of TEX. BUS. & COM. CODE § 20.04(b) (on behalf of the Identity Theft Subclass)**

38.     Plaintiff incorporates by reference all previous paragraphs of this Complaint as though fully set forth here.

39.     TransUnion is a consumer reporting agency as defined by the Texas CCRA, TEX. BUS. & COM. CODE § 20.01, et seq.

40.     Mr. Niermann is a "consumer" within the meaning of the Texas CCRA, because he is an individual residing in Texas. *Id*. § 20.01(2).

41.     On June 25, 2014, Mr. Niermann sent a proper Security Freeze request to TransUnion including a copy of a valid police report involving the alleged commission of an offense under Section 32.51 of the Texas Penal Code.

42.     TransUnion unlawfully required that Mr. Niermann, a victim of identity theft, pay a $10.00 charge for placement of the Security Freeze, in violation of TEX. BUS. & COM. CODE § 20.04(b).

43.     In unlawfully charging Mr. Niermann the $10.00 fee, TransUnion acted willfully contrary to the plain and unambiguous requirements of TEX. BUS. & COM. CODE § 20.04(b).

44.     In the alternative, TransUnion was negligent in charging Mr. Niermann the $10.00 fee contrary to TEX. BUS. & COM. CODE § 20.04(b).

45.     As a result of TransUnion's violations of TEX. BUS. & COM. CODE § 20.04, Mr. Niermann and the Class Members are entitled to damages including statutory damages under TEX. BUS. & COM. CODE § 20.09 and injunctive relief.

### C.  Damages and Other Relief

46.     TransUnion's acts and omissions were a proximate and producing cause of damages to Mr. Niermann and the Class Members. Mr. Niermann and the Class were subjected to losses including lost time and the increased risk of identity theft. In addition, Mr. Niermann and the Class are entitled to statutory damages of $1,000 under TEX. BUS. & COM. CODE § 20.09(a) because TransUnion willfully violated the Texas CCRA or, in the alternative, to statutory damages of $500 under TEX. BUS. & COM. CODE § 20.09(b) because TransUnion negligently violated the Texas CCRA.

47.     In addition, Mr. Niermann seeks an injunction on behalf of the Class requiring TransUnion to comply with all Security Freeze requests submitted by Texas residents by certified mail with proper identification within five business days without requiring payment in advance of any charges or submission of a police report, investigative report, or complaint involving the alleged commission of an offense involving identity theft as a precondition for placing the Security Freeze.

48.     Mr. Niermann also seeks his reasonable and necessary attorneys' fees and costs incurred in connection with this suit, as well as pre-judgment and post-judgment interest, at the highest rates allowed by law.

### VI.     CONCLUSION AND PRAYER

49.     Wherefore, Plaintiff Jon Niermann, individually and on behalf of others similarly situated, prays for judgment ordering relief as follows:

1. certifying the Class and the Identity Theft Subclass and appointing Mr. Niermann to represent the Class and the Identity Theft Subclass;

2. declaring that TransUnion is financially responsible for notifying all Class Members about this suit;

3. enjoining TransUnion from further violations of the Texas CCRA;

4. awarding Mr. Niermann and the members of the Class and the Identity Theft Subclass actual damages, punitive damages, consequential damages, and statutory damages;

5. awarding Mr. Niermann and the Class members pre-judgment and post-judgment interest;

6. awarding Mr. Niermann and the Class members reasonable attorneys' fees and costs of suit, including expert witness fees, pursuant to TEX. BUS. & COM. CODE § 20.09(a)–(b), the common fund theory, or any other applicable statue, theory, or contract;

7. granting leave to amend the Complaint to conform to the evidence produced at trial; and

8. awarding such other relief as this Court may deem just and proper.

## VII.    DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Mr. Niermann demands a trial by jury on all claims so triable.

Dated: March 18, 2015                    Respectfully submitted,

*/s/ Michael A. Caddell*
Michael A. Caddell
mac@caddellchapman.com
Cynthia B. Chapman
cbc@caddellchapman.com
Amy E. Tabor (*pro hac vice forthcoming*)
aet@caddellchapman.com
CADDELL & CHAPMAN
1331 Lamar, Suite 1070
Houston TX 77010-3027
Telephone:  713-751-0400
Facsimile:  713-751-0906

Francis R. Greene
fgreene@edcombs.com
EDELMAN, COMBS, LATTURNER &
GOODWIN, LLC
20 South Clark Street
Chicago IL 60603
Telephone: 312-739-4200
Facsimile: 312-419-0379

*Attorneys for Plaintiff Jon Niermann*